# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAYDEN GRIFFITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-273-GKF-FHM |
| ) | |
| CANEY VALLEY PUBLIC SCHOOLS, ) | |
| RICK PETERS, CLINT SUMNER, JOE ) | |
| LEWIS, JEANIE HUFFAKER, RON ) | |
| PRUITT, and SUE P. WOODS, ) | |
| ) | |
| Defendants. ) | |

## AMENDED OPINION AND ORDER

Before the court is the Report and Recommendation of United States Magistrate Judge Frank H. McCarthy [Dkt. #19], in which the Magistrate Judge recommends that the court deny plaintiff Hayden Griffith's Motion for Preliminary Injunction [Dkt. #3].[1] Griffith has filed Objections to the Report and Recommendation [Dkt. #20]. For the following reasons, the court overrules Griffith's objections, accepts the Magistrate Judge's Report and Recommendation, and denies Griffith's Motion for Preliminary Injunction.

**I.  Background**

Griffith, a member of the Delaware Tribe and the Cherokee Nation, is a senior at Caney Valley High School. She is scheduled to participate in a graduation ceremony on Thursday evening, May 21, 2015. In recognition of her upcoming graduation, an elder of the Delaware Tribe gave Griffith an eagle feather, an object which is sacred according to Griffith's Native American religious beliefs. As an expression of her beliefs, she wishes to attach the eagle feather

---

[1] Plaintiff filed her Complaint at 6:26 p.m. on Friday, May 15, 2015. The following Monday morning, May 18, 2015, the court referred this matter to the Magistrate Judge for a hearing on the Motion for Preliminary Injunction and a Report and Recommendation because the court is currently presiding over a six-day criminal jury trial.

to her graduation cap during her graduation ceremony. But the school prohibits all students from decorating their graduation caps, and has informed Griffith that she will not be permitted to participate in the ceremony if she attaches the feather to her cap during the ceremony. The school has offered to allow Griffith to wear the feather in her hair or on a necklace, or to carry the feather during the ceremony, but Griffith maintains it would be disrespectful and inconsistent with her religious beliefs not to wear the feather attached to the graduation cap.

Griffith contends that the school's policy of prohibiting decorations on graduation caps violates her rights under the First Amendment to the United States Constitution to free exercise of religion and to free speech. She also contends that the policy violates her rights under the Oklahoma Religious Freedom Act, Okla. Stat. tit. 51, § 251 *et seq.* ("ORFA"). She seeks a preliminary injunction prohibiting the school from enforcing the policy, thereby permitting her to wear the feather on her graduation cap during the graduation ceremony.

The Magistrate Judge held a hearing on Tuesday, May 19, 2015. On Tuesday evening, he issued his Report and Recommendation, in which he recommended that Griffith's motion be denied. Griffith filed her Objections to the Report and Recommendation yesterday morning, and the defendants filed their response early yesterday afternoon.

**II.   Standard of Review**

This court must conduct a *de novo* review of the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) ("De novo review is required after a party makes timely written objections to a magistrate's report. The district court must consider the actual testimony or other evidence in the

record and not merely review the magistrate's report and recommendations."). The court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b).

**III. Discussion**

A preliminary injunction is an extraordinary remedy; therefore, a movant's right to relief must be clear and unequivocal. *Dominion Video Satellite, Inc., v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). To obtain a preliminary injunction, the movant bears the burden of showing: 1) a substantial likelihood of prevailing on the merits; 2) irreparable harm unless the injunction is issued; 3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and 4) the injunction, if issued, will not adversely affect the public interest. *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

Three types of preliminary injunctions are specifically disfavored: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. For these categories of disfavored preliminary injunctions, "the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (quoting *Dominion Video Satellite, Inc.*, 269 F.3d at 1154–55). In his Report and Recommendation, the Magistrate Judge determined that Griffith's motion would involve each of these categories. [Dkt. #19, pp. 2–3]. Griffith did not object to this finding. Thus, the court finds that Griffith must meet this heightened burden.

A. Likelihood of Success on the Merits

   i. *Hybrid-Rights Theory*

Griffith argues that, because she alleges both a free exercise claim and a free speech claim, the court must apply a heightened level of scrutiny to the school's policy prohibiting decorations on graduation caps during the graduation ceremony. [Dkt. #20, p. 17]. Griffith's argument has its origins in *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872 (1990). Under *Smith*, when a person's free exercise of religion is impaired by a neutral rule of general applicability issued by a governmental entity, the court examines the rule under the rational-basis review standard. *See id*. at 878 ("If prohibiting the exercise of religion . . . is not the object of the [rule], but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."); *see also United States v. Hardman*, 297 F.3d 1116, 1126 (10th Cir. 2002) ("In effect, *Smith* creates a 'safe harbor'—if the law is 'a valid and neutral law of general applicability,' then it must simply be rationally related to a legitimate government end."). In declining to apply strict scrutiny to neutral rules of general applicability, the Court distinguished some of its previous free exercise decisions, noting that in those cases, the plaintiff had also asserted other constitutional claims, such as freedom of speech and of the press. *Smith*, 494 U.S. at 882.

Some courts have interpreted this language in *Smith* as recognizing a "hybrid-rights" theory, under which courts apply heightened scrutiny in cases where multiple constitutional violations are asserted together. *See, e.g., Miller v. Reed*, 176 F.3d 1202, 1207–08 (9th Cir. 1999). The Supreme Court has not further articulated a hybrid-rights theory based on *Smith*, and the significance of the language in *Smith* is uncertain. *See Catholic Charities of Sacramento, Inc. v. Superior Court*, 85 P.3d 67, 88 (Cal. 2004); *see also Parker v. Hurley*, 514 F.3d 87, 97 (1st

Cir. 2008) ("[w]hat the Court meant by its discussion of 'hybrid situations' in *Smith* has led to a great deal of discussion and disagreement."). But "[w]hatever the *Smith* hybrid-rights theory may ultimately mean . . . it at least requires a colorable showing of infringement of recognized and specific constitutional rights, rather than the mere invocation of a general right. . . ." *Swanson v. Guthrie Ind. Sch. Dist. No. I-L*, 135 F.3d 694, 700 (10th Cir. 1998).

As discussed below, Griffith has not made a "colorable showing of infringement" of her "recognized and specific constitutional right[]" to free speech under the First Amendment. *Id.* Thus, the court need not apply heightened scrutiny to the school's policy prohibiting decorations on graduation caps based on a hybrid-rights theory.

### ii. Free Exercise of Religion

To survive a constitutional challenge based on an alleged violation of the free exercise clause of the First Amendment, "a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1232 (10th Cir. 2009) (citing *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649–50 (10th Cir. 2006)).

Here, the school's policy prohibiting all decorations on graduation caps is a neutral policy of general applicability. Furthermore, the school has a legitimate interest in maintaining the formality of the graduation ceremony, and in demonstrating the unity of the graduating class. *See Corder*, 566 F.3d at 1229 ("A graduation ceremony is an opportunity for the School District to impart lessons on discipline, courtesy, and respect for authority."); *Bear v. Fleming,* 714 F. Supp. 2d 972, 989 (D.S.D. 2010) ("The school board has a legitimate interest in honoring its graduating seniors and preserving the unity of the class at this most auspicious event.").

Griffith contends that the policy is not rationally related to the school's interest in promoting unity, given that others students would be permitted to wear other regalia (such as stoles from the National Honor Society) and in light of the school's offer to allow her to wear the feather in her hair or on a necklace, or to carry the feather. [Dkt. #20, p. 18]. But these other regalia are permitted to allow recognition of the students' accomplishments in school-sponsored activities. *See Bear*, 714 F.Supp.2d at 989 ("The school board has a legitimate interest in ensuring that the graduation exercises convey . . . messages that advance the mission and goals of the school."). Furthermore, none of these permitted variances to the graduation regalia are worn on the cap. As the school Superintendent testified at the hearing before the Magistrate Judge, the graduation caps are the most visible aspect of the graduation regalia to members of the audience, who are seated above and behind the graduating class in the stands of the school's football stadium. The school's policy prohibiting individual decorations of the graduation cap is thus a rational means of displaying the unity of the graduating class. As such, Griffith has not shown that the school's policy is not rationally related to its legitimate interest in maintaining a solemn and dignified atmosphere at its graduation ceremony, and conveying a message of unity and discipline to its graduating class.

Griffith therefore fails to carry her burden of showing that she is likely to prevail on the merits of her free exercise claim.

### iii. Free Speech Claim

Students in public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 506 (1969)). However, the First Amendment rights of students in the public schools "are not automatically

coextensive with the rights of adults in other settings," *id.* (quoting *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 682 (1986)), and must be "applied in light of the special characteristics of the school environment." *Id.* (quoting *Tinker*, 393 U.S. at 506). In particular, educators do not offend the First Amendment by exercising control over "the style and content of student speech in school-sponsored expressive activities" that observers "might reasonably perceive to bear the imprimatur of the school" "so long as their actions are reasonably related to legitimate pedagogical concerns." *Corder*, 566 F.3d at 1227, 1229 (quoting *Hazlewood*, 484 U.S. at 271, 273).

Griffith contends that because the school permits certain forms of academic recognition—such as National Honor Society stoles—during the graduation ceremony, the ceremony is a limited public forum or a designated public forum, in which viewpoint discrimination is not permitted. [Dkt. #20, p. 12]. But the ceremony may be deemed a public forum only if school authorities have opened it "for indiscriminate use by the general public . . . or by some segment of the public, such as student organizations." *Hazlewood,* 484 U.S. at 267 (internal citations and quotation marks omitted). Here, the school does not "relinquish ultimate control over the content and orderly progression of the proceedings" (*Bear*, 714 F.Supp.2d at 988) by giving limited recognition of individual academic achievement in school-sponsored activities. In particular, the school does not relinquish control over the graduation caps, which bear no individual decoration of any kind—including recognition of academic achievement. Furthermore, given the degree of control the school exercises over the proceedings, observers would reasonably perceive the expressions made through the students' graduation regalia as bearing the imprimatur of the school. As such, a graduation ceremony "is a school-sponsored event, and, thus, the students' speech . . . is school-sponsored speech" subject to restrictions that

are reasonably related to legitimate pedagogical concerns. *Id.* (finding that a school's requirement that a student wear a cap and gown over traditional tribal clothing at a graduation ceremony did not violate his First Amendment rights); *see also Corder*, 566 F.3d at 1229 ("[T]he graduation ceremony was supervised by the school's faculty and was clearly a school-sponsored event.").

For the reasons discussed above, Griffith has not shown that the school's policy is not rationally related to a legitimate pedagogical interest in maintaining the formality of the graduation ceremony and in demonstrating the unity of the graduating class. She therefore fails to carry her burden of showing she is likely to prevail on her free speech claim.

### iv. Oklahoma Religious Freedom Act Claim

The ORFA provides that "[n]o governmental entity shall substantially burden a person's free exercise of religion unless it demonstrates that application of the burden to the person is: 1. Essential to further a compelling governmental interest; and 2. The least restrictive means of furthering that compelling governmental interest." Okla. Stat. tit. 51, § 253(B). "Substantially burden," as the term is used in the ORFA, means "to inhibit or curtail religiously motivated practice." Okla. Stat. tit. 51, § 252(7).[2]

---

[2] In her objection, Griffith argues that a substantial burden exists where the governmental entity "prevents participation in conduct motivated by a sincerely held religious belief." [Dkt. #20, p. 5 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010))]. In *Abdulhaseeb*, the Tenth Circuit considered the meaning of the term "substantial burden" as used in the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000cc-1(a). Unlike RFRA, however, the Oklahoma Religious Freedom Act defines the term "substantially burden." *Compare* Okla Stat. tit. 51, § 252(7) *with* 42 U.S.C. §§ 2000bb-2, 2000cc-5.

In *Steele v. Guilfoyle*, 76 P.3d 99 (Okla. Civ. App. 2003),[3] the Oklahoma Court of Civil Appeals stated that a governmental entity substantially burdens a plaintiff's free exercise of religion under any of three circumstances:

1. where it "[s]ignificantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a [person's] individual beliefs";
2. where it "meaningfully curtail[s] a [person's] ability to express adherence to his or her faith;" or
3. where it denies "reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."

*Id.* at 102 (quoting *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995), *cert denied* 515 U.S. 1166 (1995)). A governmental entity's action "does not substantially burden religious activity when it merely has an incidental effect that makes it more difficult to practice the religion." *Id.* (citing *Lyng v. Northwestern Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51 (1988)).[4]

Here, Griffith testified that her religion does not require her to attach the eagle feather to her cap at the graduation ceremony. She also testified that wearing the feather shows her respect for God and for the tribal elder who gave the feather to her, but that failing to attach the feather to her cap would not result in any religious detriment to her. Thus, attaching the feather to her graduation cap would be a personal expression of religious significance to Griffith, but it is not a

---

[3] As an opinion of the Oklahoma Court of Civil Appeals which has not been approved by the majority of the justices of the Oklahoma Supreme Court for publication in the official reporter, *Steele* does not constitute binding precedent, though it is persuasive authority. Okla. Stat. tit. 20, § 30.5; Oklahoma Supreme Court Rule 1.200(d)(2).

[4] Griffith contends that the Magistrate Judge's reliance on *Lyng* is misplaced, as the case was decided prior to the enactment of RFRA. [Dkt. #20, pp. 7–8]. But the Magistrate Judge's reliance was placed on *Steele*, which in turn cited *Lyng*. More importantly, the purpose of RFRA was "to bring Free Exercise jurisprudence back to the test established before *Smith*. There is no indication Congress meant to alter any other aspect of pre-*Smith* jurisprudence." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1133 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).

religiously motivated "practice" (Okla. Stat. tit. 51, § 252(7)), or an activity that is "fundamental" to her religion (*Steele*, 76 P.3d at 102). Nor does the policy prohibiting decorations on graduation caps during the ceremony "meaningfully curtail" her ability to express adherence to her faith. *Steele*, 76 P.3d at 102. The policy does not prevent Griffith from attaching the feather to her cap at any time other than the graduation ceremony. She may attach it to her cap up until she enters the graduation ceremony, and she may affix the feather to her cap immediately after the ceremony. The school superintendent also offered to re-pose for the professional photographer with Griffith wearing her feather on her cap after the ceremony. In sum, Griffith may display the feather as she wishes throughout her celebration of her graduation, other than during the graduation ceremony with her fellow classmates.

Griffith has not shown that the school's policy substantially burdens her free exercise of religion. Thus, Griffith does not meet her burden of showing a substantial likelihood of prevailing on the merits on her ORFA claim.

B. <u>Irreparable Harm, Balancing of the Harms, and Public Interest</u>

Having failed to demonstrate a violation of the ORFA or of her rights to free speech or the free exercise of religion, Griffith fails to carry her burden of showing she will suffer irreparable harm if an injunction is not issued, or that the threatened injury would outweigh the harm an injunction may cause. *Fed. Lands Legal Consortium*, 195 F.3d at 1194. Furthermore, the public interest weighs heavily in favor of the school's stated interest in maintaining the uniformity and formality of the graduation ceremony for all students. *Id.* Thus, Griffith does not meet her "heightened burden of showing that the traditional four factors weigh heavily and compellingly in [her] favor." *Fundamentalist Church of Jesus Christ of Latter-Day Saints*, 698 F.3d at 1301.

## IV. Conclusion

For the foregoing reasons, Griffith's objections [Dkt. #20] to the Report and Recommendation are overruled, and the court accepts the Magistrate Judge's recommended disposition. Griffith's Motion for Preliminary Injunction [Dkt. #3] is denied.

IT IS SO ORDERED this 21st day of May, 2015.

*[Signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT