IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HAYDEN GRIFFITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-CV-273-GKF-FHM |
| ) | |
| CANEY VALLEY PUBLIC SCHOOLS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Before the court is the Motion to Dismiss [Dkt. #32] of defendants Caney Valley Public Schools and Rick Peters. This case arises from a dispute over the defendants' policy prohibiting students from wearing decorations on their graduation caps. Pursuant to this policy, the school denied plaintiff Hayden Griffith's request to wear an eagle feather attached to her cap during its May 2015 high school graduation ceremony. In response, Griffith brought this action against the school district and its superintendent, Rick Peters, alleging that the school violated her rights under the First Amendment to the United States Constitution as well as the Oklahoma Religious Freedom Act, 51 O.S. § 251 *et seq.* ("ORFA"). Defendants now move to dismiss Griffith's amended complaint for failure to state a claim upon which relief can be granted.

**I.     The Allegations**

Griffith is an enrolled member of the Delaware Tribe of Indians and the Cherokee Nation. She has long participated in traditional and cultural practices of her Native American heritage and regularly participates in Native American religious ceremonies. An important part of her religious beliefs is the sacred nature of eagle feathers. In her religion, eagles have a special connection with God and their feathers are considered sacred objects.

Shortly before Griffith's high school graduation, a Delaware tribal elder gave her an eagle feather in recognition of her academic success, graduation from high school, and passage into adulthood. According to Griffith, in her culture, when a person is ceremonially given an eagle feather for a certain occasion, it is often seen as a sign of disrespect or dishonor to not wear the feather for that occasion. Further, according to Griffith's religious beliefs, when an eagle feather is worn, it must be worn on the head and cannot be dominated by another object that is also being worn on the head.

After receiving the eagle feather, Griffith requested permission from her school to wear the feather attached to the top of her cap (along with the traditional tassel) during her graduation ceremony. The school denied Griffith's request, explaining that students were not allowed to wear decorations on their caps at graduation. The school did, however, give Griffith the option of wearing the feather on a necklace, clipped to her hair, or held in her hand.

As a result of the school's decision, Griffith was unable to wear the eagle feather during her graduation ceremony. Although she was given the option of wearing the feather elsewhere, besides her cap, such alternatives violated her religious beliefs. According to Griffith, by not wearing the eagle feather during her graduation, she disrespected the feather, the tribal elder who gifted it to her, and God.

## II.   Procedural History

Griffith filed the present action on May 15, 2015, six days before her graduation ceremony. As part of her complaint, Griffith alleged that the school's policy violated her rights under the First Amendment and ORFA and requested a preliminary injunction allowing her to wear the eagle feather during her graduation ceremony. The court denied Griffith's request for a

preliminary injunction on May 20 (the day before her graduation), concluding that she had failed to show a substantial likelihood of success on the merits. [*See* Dkt. #23].

Shortly thereafter, Griffith filed an amended complaint, alleging the same causes of action, but requesting only declaratory judgment and nominal damages. [Dkt. #31]. As previously stated, defendants now move to dismiss Griffith's amended complaint for failure to state a claim upon which relief can be granted.

### III.    Discussion

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When applying this standard, a court must accept as true all well-pleaded factual allegations and then ask whether those facts state a plausible claim for relief. *See id.* at 679. Allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth." *Id.* at 678.

Here, Griffith alleges that the defendants violated her rights under the Free Speech and Free Exercise Clauses of the First Amendment as well as her rights under ORFA. In response, defendants submit that Griffith fails to state a claim under any of the legal theories proposed. The court considers these issues in turn.

####    A. Free Speech

The court starts with Griffith's free speech claim. "The First Amendment, which applies to the States through the Fourteenth, prohibits laws 'abridging the freedom of speech….'" *Mills*

*v. Alabama*, 384 U.S. 214, 218 (1966).  Although students retain significant First Amendment rights in the public school context, *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969), their rights "are not automatically coextensive with [those] of adults in other settings, and must be applied in light of the special characteristics of the school environment," *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (citation omitted) (internal quotation marks omitted).

"Restrictions on student speech in public schools are analyzed under one of two standards.  *Tinker* governs private student speech; *Hazelwood* governs school-sponsored speech."  *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 35-36 (10th Cir. 2013) (citation omitted).  Under *Tinker*, a school may restrict "private student speech"—i.e., "student expression that is unconnected to any school-sponsored activity," *id.* at 36—only if it reasonably concludes that such expression will "substantially interfere with the work of the school or impinge upon the rights of other students," *Tinker*, 393 U.S. at 509.  In contrast, under *Hazelwood*, a school may "control…the style and content of student speech in school-sponsored expressive activities so long as [its] actions are reasonably related to legitimate pedagogical concerns."  *Hazelwood*, 484 U.S. at 273.  "School-sponsored speech is student speech that a school affirmatively promotes, as opposed to speech that it tolerates."  *Fleming v. Jefferson Cty. Sch. Dist. R-1*, 298 F.3d 918, 923 (10th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 16, 2002) (alterations omitted) (internal quotation marks omitted).  It includes "expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school."  *Hazelwood*, 484 U.S. at 271.

Here, the school contends that a student's graduation attire is school-sponsored speech and that its policy prohibiting decorations on graduation caps is reasonably related to legitimate

pedagogical concerns.  In particular, the school submits that the policy allows it to "convey[] one last message of unity, academic achievement, discipline, and respect for authority" to its students.  [Dkt. #32, p. 7].

In response, Griffith asserts that the school has created a limited public forum for student expression in their graduation attire and, consequently, that her wearing of an eagle feather is private student speech.  She points to the fact that the school permits students to wear sashes and stoles during graduation in recognition of school-related achievements and activities (such as the National Honor Society and the National FFA Organization), and contends that her desired form of expression (the eagle feather) conveys the same message of success and achievement.  She thus submits that the school's refusal to allow to her to wear the eagle feather on her cap at graduation constitutes impermissible viewpoint discrimination.

Griffith's contentions are unpersuasive.  "[S]chool facilities may be deemed to be public forums only if school authorities have by policy or by practice opened those facilities for indiscriminate use by the general public, or by some segment of the public, such as student organizations."  *Hazelwood*, 484 U.S. at 267 (citation omitted) (internal quotation marks omitted).  Here, the school has not created a forum (of any kind) for student expression on their graduation caps.  Indeed, as Griffith herself acknowledges, the school does not allow students *any* form of personal expression on their graduation caps during the commencement ceremony.  The fact that students are allowed to wear sashes and stoles in recognition of certain school-related achievements and activities does not alter this conclusion.  Such items are allowed only for academic achievement or participation in *school-sponsored* activities and, crucially, are not worn over or affixed to the graduation cap.  In sum, the facts alleged fail to show that the school created a limited public forum for Griffith's desired form of expression.

To the extent it embodies expressive activity, the students' graduation attire was school-school-sponsored speech. Such clothing is not a form of speech that the school merely "tolerates"—it "is student speech that [the] school affirmatively promotes." *See Fleming*, 298 F.3d at 923 (alterations omitted) (internal quotation marks omitted); *see also Dreaming Bear v. Fleming*, 714 F. Supp. 2d 972, 988-89 (D.S.D. 2010) (holding that a student's graduation attire is school-sponsored speech). "This is not a case where [student] speech *happens* to occur in a school setting as in *Tinker*. Rather, it [was a] school-sponsored event—the graduation exercises—which provide[d] the forum and opportunity for [Griffith's] speech." *Dreaming Bear*, 714 F. Supp. 2d at 988-89. Given the degree of control the school exercised over this event, observers reasonably could have perceived the expressions made through the students' graduation regalia as bearing the imprimatur of the school. *Cf. Corder v. Lewis Palmer Sch. Dist. No. 38,* 566 F.3d 1219, 1230 (10th Cir. 2009) (concluding that a student's valedictory speech was school-sponsored speech based on the degree of control that the school exercised over such speeches and the fact that the graduation ceremony was a school-sponsored event). Thus, the students' graduation attire constitutes school-sponsored speech.

This, in turn, raises the question of whether the school's current dress policy is reasonably related to a legitimate pedagogical concern. The court concludes that it is. Such a policy promotes unity, discipline, and respect for authority, and allows the school to reserve special recognition for student achievement or participation in school-related activities. *See Fleming*, 298 F.3d at 925 ("The universe of legitimate pedagogical concerns is by no means confined to the academic for it includes discipline, courtesy, and respect for authority." (alterations omitted) (internal quotation marks omitted)); *Dreaming Bear*, 714 F. Supp. 2d at 990 (holding that a school board's cap-and-gown dress code furthered the school's legitimate

pedagogical "interest in demonstrating the unity of the class and celebrating academic achievement"). Moreover, the policy avoids the controversy that could potentially arise from allowing each individual graduating student to wear his or her own religious, cultural, or familial emblems of personal success or achievement. *See Corder,* 566 F.3d at 1230 (concluding that school's interest in "preserv[ing] neutrality on matters of controversy within a school environment" is a legitimate pedogical concern); *Fleming*, 298 F.3d at 933-34 (holding that a school's interest in avoiding religious controversy is a legitimate pedagogical concern).

For the foregoing reasons, the court concludes that Griffith's allegations fail to state a violation of her free speech rights under the First Amendment.

### B. Free Exercise

The court now turns to Griffith's free exercise claim. "The Free Exercise Clause of the First Amendment, which has been made applicable to the States by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....'" *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 876-77 (1990) (emphasis omitted). "Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief. Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Corder*, 566 F.3d at 1232 (citation omitted) (internal quotation marks omitted). "A law is neutral so long as its object is something other than the infringement or restriction of religious practices," *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 649-50 (10th Cir. 2006), and is "generally applicable" provided that "it does not make distinctions based on religion," *Michigan Catholic Conference & Catholic Family Servs. v. Burwell*, 755 F.3d 372,

394 (6th Cir. 2014) *vacated on other grounds by Michigan Catholic Conference v. Burwell*, 135 S. Ct. 1914 (2015); *accord Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 542-43 (1993) (noting that a law is not generally applicable "when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation"). "By contrast, if a law that burdens a religious practice or belief is not neutral or generally applicable, it is subject to strict scrutiny, and [thus] … violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004).

Here, the school submits that its no-cap-decoration policy is both neutral and general applicable and that Griffith has failed to allege facts showing the policy lacks a rational basis. In response, Griffith contends that the school's policy "was imposed by Superintendent Peters in an ad hoc fashion," and thus "is not a rule of general applicability." [Dkt. #33, p. 24].[1]

The court agrees with the defendants. Griffith has not alleged any facts showing that school's no-cap-decoration policy applies or was enforced against her for religious reasons. Indeed, the facts alleged show exactly the opposite. According to the amended complaint, before graduation students were informed, in writing, that "HATS MAY NOT BE DECORATED AT ALL." [Dkt. #31, First Amended Complaint, p. 5]. This policy does not draw distinctions based

---

[1] Griffith makes two additional arguments which, in light of the court's ruling on her free speech claim, are no longer tenable. In particular, she contends that the school's policy (1) is subject to a heightened level of scrutiny because she had pleaded both free exercise and free speech claims, and (2) fails rational basis review. As to the first argument, although "heightened scrutiny may be appropriate" "when a free exercise claim is coupled with some other constitutional claim (such a free speech claim)," invoking this "hybrid-rights theory" requires, at a minimum, "a colorable showing of infringement of [the] companion constitutional right." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1295 (10th Cir. 2004). Because Griffith has failed to plead a viable free speech claim, her reliance on this theory is misplaced. *See id.* As for her second argument, for the reasons previously discussed, the school's no-cap-decoration rule is reasonably related to several legitimate pedagogical interests.

on religion, nor is there any allegation that it was enforced in a discriminatory manner. Further, any suggestion that the defendants harbored a discriminatory motive is belied by the fact that the school made efforts to accommodate Griffith's religious practice.

For her part, Griffith makes much of the fact that the school's no-cap-decoration rule is not part a "formal written policy or procedure." [*Id.*] The lack of such a formal policy, she contends, is evidence that the school's no-cap-decoration rule is not generally applicable. The court disagrees. As just mentioned, the school *did* communicate this policy to the graduating class *in writing*. That the policy was not memorialized in a more "formal" document, without more, does not give rise to a plausible inference of disparate treatment.

For the forgoing reasons, Griffith's amended complaint fails to state a plausible free exercise claim.

### C. Oklahoma Religious Freedom Act

The court now turns to Griffith's ORFA claim. Since diversity of citizenship is not alleged, the court's jurisdiction over this state law claim is based solely on supplemental jurisdiction.[2] Under 28 U.S.C. § 1367(c), a "district court may decline to exercise supplemental

---

[2] In paragraph 8 of her amended complaint, Griffith submits that her ORFA claim arises under federal law because the statute defines "[e]xercise of religion" as meaning (among two other, state-law sources) "the exercise of religion under…the First Amendment to the Constitution of the United States." 51 O.S. § 252(2). Griffith thus asserts that the court has federal question jurisdiction over this state law claim under 28 U.S.C. § 1331.

"For statutory purposes, a case can 'arise under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (alteration omitted) "But even where a claim finds its origins in state rather than federal law" the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* "To invoke this so-called 'substantial question' branch of federal question jurisdiction, a plaintiff must show that a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Becker v.*

jurisdiction over [such] a claim … if," among other reasons, "the claim raises a novel or complex issue of State law," or the "court has [already] dismissed all claims over which it has original jurisdiction."

Here, both of these reasons independently warrant declining jurisdiction over Griffith's ORFA claim.  As an initial matter, the claim raises difficult, unsettled issues of state law.  To date, there are few state court decisions on the statute and none from the state supreme court.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties…."); *Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 803 (10th Cir. 1991) ("Declining pendent jurisdiction is appropriate when the court needs a 'surerfooted' analysis of state law in an area of particular importance to a state.").  Second, and more importantly, this court has dismissed the only claims over which it has original jurisdiction.  *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (internal quotation marks omitted)); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (noting that the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, [a district] court should decline the exercise of jurisdiction by dismissing the case without prejudice" (alteration omitted) (internal quotation marks omitted)).  Under these circumstances, the court believes that Griffith's ORFA claim is

---

*Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (internal quotation marks omitted).
    Here, there is no indication that the federal issue allegedly involved in Griffith's ORFA claim meets any of these requirements, particularly the requirement that the federal issue be "substantial in the relevant sense." *Gunn*, 133 S. Ct. at 1066.  The court thus concludes that the claim does not "aris[e] under" federal law within the meaning of § 1331.

best resolved in state court.  The court, therefore, dismisses this claim without prejudice to its refiling in state court.

WHEREFORE, defendants' Motion to Dismiss for Failure to State a Claim [Dkt. #32] is granted in part and denied in part.  The motion is granted as to Griffith's federal claims and denied without prejudice as to her state law claim.  The court declines to exercise supplemental jurisdiction over Griffith's state law claim and, therefore, dismisses that claim without prejudice to its refiling in state court.

Having dismissed all of Griffith's claims, her Motion for a Permanent Injunction [Dkt. #11] is denied.

ENTERED this 5th day of January, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT